IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARDBALL BASEBALL ACADEMY LLC | § § § | |
| *Plaintiff,* | § § | |
| V. | § | Civil Action No. 4:22-CV-01181 |
| | § § | |
| CAMERON JOHNSON | § | |
| *Defendant.* | § | |

# DEFENDANT'S SECOND AMENDED ANSWER AND COUNTERCLAIMS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Defendant Cameron Johnson ("Mr. Johnson" or "Defendant") in the above-styled and numbered cause of action and files this Second Amended Answer and Counterclaims against Plaintiff Hardball Baseball Academy LLC's ("Hardball" or "Plaintiff") Original Petition. For good cause, and in support of same, Defendant would respectfully show this Honorable Court as follows:

## I
## GENERAL DENIAL

1. Defendant hereby asserts a general denial under Rule 92 of the Texas Rules of Civil Procedure, denies each and every allegation contained in Plaintiffs' Original Petition, and demands strict proof thereof as required by the Texas Rules of Civil Procedure.

2. Defendant attaches the following exhibits in support of said General Denial:

    a) <u>Exhibit 1</u>. Declaration of Cameron Johnson

    b) <u>Exhibit 2</u>. Declaration of Richard Johnson

## II
## AFFIRMATIVE DEFENSES

3. Defendant hereby asserts the following affirmative defenses:

    **C. The Employment Agreement Fails for Lack of Consideration and is Unconscionable.**

4. Plaintiff is not entitled to the injunctive relief demanded in the Petition, as Plaintiff has come to court with unclean hands. Specifically, Plaintiff has failed to honor several contractual obligations made by Plaintiff within the Employment Agreement. Specifically, while the Employment Agreement attempts to bind Defendant to providing significant services on Plaintiff's behalf, the only recited compensation for Defendant's performance within the Employment Agreement is recited as "some employment benefits" and not defined further therein. There is no mention of any other compensation, monetary or otherwise, within the Employment Agreement that serves as consideration for the several covenants attributable to Defendant within same.

5. A contract must be based on valid consideration, that is mutuality of obligation, and a contract lacking consideration is unenforceable. *Plains Builder, Inc. v. Steel Source, Inc*. 408 S.W.3d 596 (Tex.App –Amarillo 2013, no pet.). Notably, Defendant began working for Plaintiff in 2013, although the contracts now sued upon by Plaintiff were not promulgated until 2020. During that time, as averred by Defendant, Plaintiff failed to provide any of form of "some employment benefits" to Defendant and, in fact, had no set structure of monetary compensation to be paid to Defendant for his services. Rather, Defendant was paid at Plaintiff's leisure and discretion, and said pay was neither fair nor reasonable considering the approximately three hundred forty (340) days per year that Defendant provided services on Defendant's behalf.

6. Still further, Plaintiff continuously failed to provide a clean, safe, and properly maintained facility where Defendant could perform his services appropriately. Given that Plaintiff

purports to operate a high-caliber athletics training facility, the risk of injury is omnipresent yet despite Plaintiff's insistence, Defendant refused and ignored the basic safety and security of both Defendant, Plaintiff's other employee and personnel, and all patrons of Plaintiff's facility. Thus, Plaintiff demanded Defendant's performance and adherence to restrictive covenants that were not the result of a negotiated business relationship, but merely the unilateral whims of Plaintiff.

7. Perhaps unsurprisingly, Plaintiff now seeks to enforce an unenforceable Employment Agreement that only recites conditions applicable to Defendant rather than the mutual obligations that are common in any contract between an employer and employee. Only the sheer love of the services themselves served as the impetus for Defendant's relentless performance, and now Plaintiff seeks to bar Defendant from plying Defendant's trade through the false protection of spurious employment covenants. Defendant has established himself as an authority figure in the baseball community and coaching industry, where he has found and managed his own clients independently, all of which Plaintiff was forced to do on account of Plaintiff's failure to ever provide any lawful consideration in exchange of Plaintiff's services.

8. An indefinite contract results when a material or essential term, a term a party 'would reasonably regard as [a] vitally important element of their bargain,' is missing at the time the contract was formed." *Id.*, quoting *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex.1995). In this instance, any compensation serving as consideration for Defendant's performance was totally absent from the Employment Agreement at its inception. As the Employment Agreement is illusory without stated consideration, it if unenforceable against Defendant.

9. Temporarily suspending argument regarding the lack of consideration within the Employment Agreement, the non-compete provision contained within same (which relates to the separate Non-Compete Agreement discussed below) is unconscionable as written. Specifically,

the scope in time of the non-compete agreement is three (3) years and its geographic scope is *thirty (30) miles of any current or future location*.

10. Non-compete provisions are only enforceable when they are reasonably constrained in time, scope, and restricted activities which neither impose an unnecessary restrain to protect the enforcer's goodwill or legitimate business interests. TEX. BUS. COM. CODE §15.50(A). Indeed, valid non-compete provisions facilitates economic competition and is not to be a mere naked restraint on trade. TEX. BUS. COM. CODE §15.04.

11. Here, Plaintiff seeks to enforce a non-compete provision which extends far beyond any reasonable restraint on protecting Plaintiff's business or goodwill. Plaintiff instead seeks to merely prevent Defendant from ever operating within the baseball coaching industry practically anywhere within the area of Houston, one of the largest commercial centers in the United States. Baseball coaching is a busy industry in Houston and the surrounding communities but although Plaintiff has an interest in protecting its business, the time and geographic scopes within the non-compete provision are not reasonable. Texas courts routinely uphold scopes in time of two (2) years or less and geographic scopes much smaller than thirty (30) miles given the amount of industry regionally present.

12. The instant non-compete provision neither facilitates competition nor serves to provide Defendant with any reasonable prospect of employment within the industry, rendering the non-compete provision unconscionable and unenforceable. In turn, any claim of injunctive relief by Plaintiff must be strictly denied.

    B.    **The Non-Compete Agreement Fails for Lack of Consideration and is Unconscionable.**

13. Plaintiff's current attempt to enforce the separate Non-Compete Agreement against Defendant must fail for the same reasons that the Employment Agreement fails, as well as for

certain other reasons. The Non-Compete Agreement similarly lacks consideration and is also unconscionable, but is further *not* part of an enforceable ancillary agreement as required for its legitimacy.

14. A non-compete covenant in an ancillary or other enforceable agreement is enforceable when it contains reasonable limitations on time, scope, and restricted activities which cannot impose an unnecessary restraint to protect a business's good will or its interests subject to the covenant. TEX. BUS. COM. CODE §15.50(A). In the two-step threshold inquiry to determine if a convent not to compete is enforceable under the Covenants Not to Compete Act, a court determines whether there is an "otherwise enforceable agreement" between the parties, and, if so, the court determines whether the covenant is "ancillary to or part of" that agreement. *Marsh United States, Inc. v. Cook*, 354 S.W.3d 764 (Tex. 2010). The "otherwise enforceable agreement" requirement is satisfied when the covenant is part of an agreement that contained mutual non-illusory promises. *Id.*

15. The Non-Compete Agreement is an entirely separate agreement promulgated by Plaintiff for which no additional consideration can be identified, as is required to make it enforceable, and thus cannot be enforced from a standalone promise by an employee. "[A] covenant cannot be a stand-alone promise from the employee lacking any new consideration from the employer." *Wharton Physician Servs., P.A. v. Signature Gulf Coast Hosp., L.P.*, 2016 Tex. App. LEXIS 348.

16. As with the Employment Agreement, no compensation, promises, benefits, or any other promises are recited by Plaintiff within the Non-Compete Agreement that would remotely serve as the required consideration for same. The Non-Compete Agreement is unilateral in nature, written entirely to Plaintiff's benefit, and only requires that Plaintiff execute same as Plaintiff's single obligation. *Every* restrictive covenant contained within same falls squarely upon Defendant.

17. An employer's promise is not sufficient consideration to give rise to an interest worthy of protection by a covenant not to compete, and thus, such a covenant is not ancillary to the agreement required to enforce the covenant. See *Strickland v. Medtronic, Inc.* 97 S.W.3d 835 (Tex. App. –Dallas 2003, pet. denied.). As previously discussed, the Employment Agreement fails for lack of consideration and unconscionability. This lack of consideration further renders the instant Non-Compete Agreement as *not* ancillary to the Employment Agreement, as Plaintiff's promises to provide "some employment benefits," without further specification, constitutes the very type of illusory promise insufficient to serve as appropriate consideration.

18. The Non-Compete Agreement further fails as the time and geographic scopes recited within same are unconscionable. Because Plaintiff maintains at least two (2) business locations that are within thirty (30) miles from one another, the effect of the thirty (30) mile geographic scoped recited within the Non-Compete Agreement is that it doubles to an effective sixty (60) mile restriction that is well beyond what is reasonable to protect the goodwill or other business interests of the Plaintiff. This attempt to shut Defendant out of Defendant's established industry is blatantly unconscionable and renders the Non-Compete Agreement unenforceable.

19. Plaintiff's attempt to bar Defendant from participation in the coaching industry for three (3) years is also in excess of what is permissible under Texas law, the standard being no more than two (2) years. This fails as a matter of law under the laws of the State of Texas. *Marsh v. Cook*, 354 S.W.3d 764.

20. Given the defective nature of the Employment Agreement and the Non-Compete Agreement for failure of consideration, the unconscionability of the terms therein, the failure of Plaintiff to provide appropriate verification of said consideration, the claims laid forth by Plaintiff are insufficient to recover and Defendant should be discharged from any liability therefrom.

C. **Plaintiff Has Not Misappropriated Trade Secrets Belonging to Plaintiff and Has Not Violated Texas Uniform Trade Secrets Act.**

21. Plaintiff has no "trade secrets" pursuant to the Texas Uniform Trade Secrets Act ("TUFTA") that are protectable and the plaintiff independently developed the programs and classes that he offered.

22. A "trade secret" means:

> ...all forms and types of information, including business…technical, economic…plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized…
> TEX. CIV. PRAC. REM. CODE §134A.002(6)

23. The qualifying language of the statute goes further, stating that any such material shall only be counted as a trade secret where (a) "the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret" and (b) "the information devices independent economic value, actual or potential, from being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure of use of the information." *Id.*

24. Plaintiff accuses Defendant of violating TUFTA without any specification as to which trade secrets were misappropriated, by what method Defendant supposedly misappropriated them, and how Johnson leaving Plaintiff's employment has set forth any direct or proximate injury to Plaintiff. This allegation falls flat for want of specificity.

25. Here, Plaintiff has taken no steps to secure any of his property which might constitute under the law a trade secret. No trainings were provided to the Defendant regarding the safe keeping of such and no security measures are in place to safeguard any property that could come into Defendant's possession. The methods by which Defendant instructed his students were

entirely of his own making, and nothing that was taught to him by Plaintiff at the beginning of his tenure with Plaintiff was previously unknown to him or is uncommon in the baseball coaching industry. In fact, if there are trade secrets to have been misappropriated at all in this dispute, they are the trade secrets of Defendant that may have been pilfered by Plaintiff during his several years of employment. Defendant spent the entirety of his employment with Plaintiff coaching at a facility separate from the main facility where the Plaintiff is effectively headquartered.

26. Apart from a select few clients, in the near decade where Defendant worked for Plaintiff nearly all clients receiving Defendant's services were procured, and later coached, by Defendant independently of Plaintiff. No guidance was provided to Defendant by Plaintiff for how to secure clients, no leads came forth from Plaintiff to assist Defendant in performing his services, and often the threat of termination loomed over Defendant should he fail to secure more clients of his own accord. Plaintiff's trade secret claims against Defendant are meritless and should be dismissed out of hand.

## III
## COUNTERCLAIMS

27. Defendant worked for Plaintiff for over nine (9) years, beginning in 2013 following Defendant's graduation from college. Defendant specifically worked as a coach for Plaintiff's baseball academy business. Relegated to the lesser of Plaintiff's two (2) facilities, Defendant has been subjected to operating with rundown security equipment, risking injury to both himself and to his players as the bulk of all improvements that Plaintiff employed were to the other facility where Defendant was not allowed to perform his coaching services.

28. Importantly, Defendant brought all of the expertise, training, and knowledge necessary to perform all his employment services on behalf of Plaintiff by virtue of Defendant's prior playing experience as an elite collegiate baseball player. Plaintiff provided neither training nor instruction

of any kind in directing Defendant's performance of his coaching services. Neither did Plaintiff share any confidential or proprietary information with Defendant pertaining to Plaintiff's business operations. This is mainly because most, if not all, of the information related to Plaintiff's operations are easily available online through Plaintiff's website and social media accounts. Plaintiff's digital presence provides the general public with detailed information on the pricing, hours, facilities, and training and coaching services available through Plaintiff. Thus, not only has Defendant not misappropriated any trade secrets of Plaintiff, but Plaintiff maintains no such trade secrets to misappropriate.

29. For nearly the entirety of Defendant's employment with Plaintiff, Defendant has worked upwards of three hundred forty (340) days every calendar year, constituting enumerable hours of overtime and services performed during weekends and holidays. During Defendant's tenure, is compensation has never been specifically set or established, either by written contract or otherwise. Plaintiff payroll practice with Defendant appears at all relevant times to have been one of absolute discretion, unsupported estimated, and pure whimsy. Even the written Employment Agreement that Plaintiff now seeks to enforce (notably coming seven (7) years after Defendant began employment with Plaintiff) has no recitation of compensation beyond the vague and undefined phrase of "some employment benefits." To date, no articulable reason has been provided by Plaintiff to explain the poor treatment to which Defendant has been repeatedly subjected.

30. During Defendant's employment, Defendant was required to travel to practices, games, and tournaments outside the two (2) facilities. More specifically, Defendant traveled to cities outside of Houston, Texas, like Dallas, Texas and the State of Louisiana. Defendant was not reimbursed for travel expenses, such as gas or milage reimbursement for driving, food, and

lodging. In fact, Plaintiff would deduct money from Defendant's paycheck to pay for these expenses.

31. In what is likely several violations of relevant tax law, Defendant was paid every year by Plaintiff as if Defendant were a 1099 contractor, despite the fact that Plaintiff sought to control several aspects of Defendant's performance of his employment services. The Employment Agreement Plaintiff now seeks to enforce clearly indicates that Defendant is the employee of Plaintiff. However, Defendant, despite working upwards of three hundred forty (340) days per calendar year, has never been paid any overtime, has been provided no employment benefits, and has received no compensation of any kind toward Defendant's employment-related costs and expenses. Given that Defendant's employment necessarily requires travelling with Defendant's baseball teams, these costs and expenses are considerable.

32. In fact, Plaintiff continued to expand the expectations placed upon the shoulders of Defendant during his employment, including travelling hundreds of miles in a single weekend for scouting and other coaching related events and working most days of the week while never being fairly compensated for his time. This occurs simultaneously with Defendant raising a young son as a single father. Thus, when Plaintiff approached Defendant with the Employment Agreement and Non-Compete Agreement it now seeks to enforce in 2020, Plaintiff was fully aware that Defendant had little choice other than submit to Plaintiff's incredulous demands.

33. In 2021, just prior to Defendant's departure from his employment with Plaintiff, Defendant was struck in the face by a baseball during the course of regular practice. Despite having voiced his concerns regarding the dilapidated netting (and other security equipment) that acts as a buffer between the pitcher and the practicing batter, Defendant was repeatedly rebuffed by Plaintiff regarding making the obviously necessary repairs. Defendant, ever vigilant as an

employee and coach, did his best to continue performed his employment services despite being. In fact, Defendant was regularly commanded to come in early to fix such equipment himself (despite not maintaining that professional specialty) and was given absolutely no reimbursement or compensation of any kind for the time, costs, labor, or materials necessary for Defendant to make such repairs.

34. Defendant has now moved on to teach and coach elsewhere, but does so strictly through the exact methods that were exclusively created, learned, and used by Defendant *outside of his employment* with Plaintiff. Not only has Defendant never used a trade secret or any measure of confidential or proprietary information belonging to Plaintiff as alleged in Plaintiff's Original Petition, but these supposed trade secrets simply do not exist. Plaintiff did not create the practice methods learned through Defendant's lifetime of baseball participation, nor did Plaintiff develop any proprietary information that assisted Defendant during his tenure with Plaintiff or that Defendant could commercialize outside of that tenure.

35. The only misappropriation that has occurred in this situation is Plaintiff's theft of Defendant's time and labor without legal justification or lawful consideration. Plaintiff has committed a litany of legal violations through its unlawful employment practices toward Defendant for which Defendant has a lawful right or redress, recovery, and recompense. In order to recover the significant damages Defendant suffered due to Plaintiff's wrongful actions, Defendant now brings the following counterclaims against Plaintiff.

<u>Counterclaims Relating to Violations of the Fair Labor Standards Act</u>

36. Defendant's counterclaims arise under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 ("FLSA"). The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-

being of workers." 29 U.S.C. § 202(a). To achieve its humanitarian goals, the FLSA defines appropriate pay deductions and sets overtime pay, minimum wage, and recordkeeping requirements for covered employers. 29 U.S.C. §§ 206(a), 207(a), 211(c).

37. Plaintiff violated the FLSA by employing Defendant and other similarly situated non-exempt employees at a rate below minimum wage. 29 U.S.C. §206 (a)(1)(C). Defendant also violated the FLSA by employing Plaintiff and other similarly situated non-exempt employees "for a workweek longer than forty hours [but refusing to compensate them] for [their] employment in excess of [forty] hours … at a rate not less than one and one-half times the regular rate at which [they are or were] employed." 29 U.S.C. § 207(a)(1).

38. Plaintiff further violated the FLSA by failing to maintain accurate time and pay records for Defendant and other similarly situated non-exempt employees as required by 29 U.S.C. § 211(c) and C.F.R. pt. 516.

### A. Failure to Pay Minimum Wage

39. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Answer and Original Counterclaims as if set forth verbatim herein.

40. During Defendant's employment with Plaintiff, Defendant was a non-exempt employee. As a non-exempt employee, Plaintiff was legally obligated to pay Defendant for the hours he worked at minimum wage. 29 U.S.C. § 206(a)(1). Plaintiff failed to pay Defendant for the hours he worked at the minimum wage. Specifically, the wages (after considering the failure to set a specific wage and extending Defendant's working hours to drop any supposed hourly wage to an unlawful level) was less than the minimum wage in violation of 29 U.S.C. § 206(a)(1).

41. If Plaintiff classified Defendant as exempt from the minimum wage requirements of the FLSA, he was misclassified because no exemption excuses Plaintiff's non-compliance with the

minimum wage requirements of the FLSA.

42. Plaintiff knew or showed a reckless disregard for whether Plaintiff's pay practices violated the minimum wage requirements of the FLSA, and thereby willfully violated the minimum wage requirement of the FLSA.

### B. Failure to Pay Overtime

43. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Answer and Original Counterclaims as if set forth verbatim herein.

44. During Defendant's employment with Plaintiff, Defendant was a non-exempt employee. As a non-exempt employee, Plaintiff was legally obligated to pay Defendant "at a rate not less than one and one-half times the regular rate at which [Defendant was] employed" for the hours that Defendant worked in excess of forty (40) hours per week. 29 U.S.C. § 207(a)(1). Plaintiff did not pay Defendant overtime for the hours Defendant worked in excess of forty (40) hours per week as required by 29 U.S.C. § 207(a)(1).

45. Instead, Plaintiff either did not pay Defendant for all the hours Defendant worked and/or manipulated Defendant's wages to reflect fewer hours than Defendant actually worked, resulting in Defendant being paid at less than one and one-half times Defendant's regular rate for the hours Defendant worked in excess of forty (40) hours per week.

46. If Plaintiff classified Defendant as exempt from the overtime requirements of the FLSA, Defendant was misclassified because no exemption excuses Plaintiff's non-compliance with the overtime requirements of the FLSA.

47. Plaintiff knew or showed a reckless disregard for whether Plaintiff's pay practices violated the overtime requirements of the FLSA, and thereby willfully violated the overtime requirements of the FLSA.

### C. Failure to Maintain Accurate Records

48. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Answer and Original Counterclaims as if set forth verbatim herein.

49. The FLSA requires employers to keep accurate records of hours worked by their employees and the waged paid to their non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. pt. 516. In addition to the pay violation of the FLSA described in the preceding paragraphs, Plaintiff further failed to keep proper records of the hours worked by Defendant and the waged paid to Defendant as required by the FLSA.

### D. Collective Action Allegations

50. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Answer and Original Counterclaims as if set forth verbatim herein.

51. On information and belief, other employees have been victimized by Plaintiff's violations of the FLSA as described above. These other employees are similarly situated to Defendant because, during the relevant time period, they were in the same or similar position, were compensated in the same or similar manner, were subject to the same pay practice or policy of Plaintiff, and were denied all their regular wages and overtime wages at one and one-half times their regular wages for all hours worked in excess of forty (40) hours per week.

52. Plaintiff's policy or practice of failing to pay the entirety of its employees' overtime compensation is a generally applicable policy or practice and does not depend on the personal circumstances or position of the putative class members. Since, on information and belief, Defendant's experiences are typical of the experiences of the putative class members, collective action treatment is appropriate.

53. All employees of Plaintiff, regardless of their individual rates of pay, who were not paid

at the minimum wage for all hours worked and/or at a rate not less than one and one-half times the regular wages at which they were employed for hours worked in excess of forty (40) per week are similarly situated. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts. The class is therefore properly defined as:

> All hourly employees who worked for Plaintiff within the last nine (9) years.

54. Plaintiff is liable to Defendant and the members of the putative class for the difference between what Plaintiff actually paid them and what Plaintiff was legally obligated to pay them. Because Plaintiff knew and/or showed a reckless disregard for whether its pay practices violated the FLSA, Plaintiff owes Defendant and the member of the putative class their unpaid overtime wages for at least the last nine (9) years. Plaintiff is liable to Defendant and the members of the putative class in an amount equal to their unpaid overtime wages as liquidated damages. Plaintiff is liable to Defendant and the members of the putative class for their reasonable attorney's fees and costs.

55. Defendant has retained counsel well-versed in FLSA collective action litigation and who are prepared to litigate this matter vigorously on behalf of Defendant and all other putative class members.

## Additional Counterclaims
(Unrelated to the Fair Labor Standards Act)

### E. Declaratory Judgement

56. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Answer and Original Counterclaims by reference as if set forth verbatim herein:

57. Pursuant to TEX. CIV. PRAC. & REM. CODE §37.001, Defendant is entitled to a judicial declaration of rights, status, and other legal relations with respect to the Employment Agreement

and Non-Compete Agreement, respectively, and any other agreements between Plaintiff and Defendant.

58. The court should declare that:

   a) The Employment Agreement is unenforceable as a matter of law and Defendant is not bound by the terms and provisions of same;

   b) TheNon-Compete Agreement is unenforceable for failure of consideration, unconscionability, and as a matter of law and Defendant is not bound by the terms and provisions of same;

   c) Plaintiff owes and is bound to pay Defendant for substantial unpaid overtime over the course of nine (9) years, where Defendant regularly worked in excess of forty (40) hours a week and was unfairly compensated in each and every pay period therein;

   d) Defendant has not stolen any proprietary and/or confidential information, intellectual property, or trade secrets of Plaintiff and Defendant's continuing to utilize the coaching techniques, tactics, and methods that were exclusively developed and exercised by Defendant does not infringe on the intellectual property rights of Plaintiff; and

   e) Plaintiff must cease all harassment of Defendant and not interfere with the business relations or the procurement of clients by Defendant outside of Plaintiff's business.

## Counterclaims Relating to Violations of Title 29 Labor

59. Defendant's counterclaims arise under 29 C.F.R. §§ 785.37-785.41 Hours Worked. This Part was enacted to determine "the principles which apply in determining whether or not time spent in travel is working time depend upon the kind of travel involved." 29 C.F.R. § 785.33. To the payment of a minimum wage by an employer to his employees who are subject to the Federal Labor Standards Act. 29 C.F.R. § 785.5.

60. Plaintiff violated Title 29 by employing Defendant and not compensating Defendant for the travel time and expense.

### F. Home to work on Special One-Day Assignment in Another City 29 C.F.R. § 785.37

61. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Counterclaims as if set forth verbatim herein.

62. During Defendant's employment with Plaintiff, Defendant was required to travel to other facilities or locations outside of the workplace to conduct practices, manage games, and attend tournaments.

63. Plaintiff knew of the travel Defendant was subject to and failed to reimburse or compensate Defendant accurately for travel expenses, such as gas or milage reimbursement for driving, food, and lodging.

### G. Travel that is All in the Day's Work 29 C.F.R. § 785.38

64. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Counterclaims as if set forth verbatim herein.

65. During Defendant's employment with Plaintiff, Defendant was required to travel to other facilities or locations outside of the workplace to conduct practices, manage games, and attend tournaments.

66. Plaintiff knew of the travel Defendant was subject to and failed to reimburse or compensate Defendant accurately for travel expenses, such as gas or milage reimbursement for driving, food, and lodging.

### H. Travel Away from the Community 29 C.F.R. § 785.39

67. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Counterclaims as if set forth verbatim herein.

68. During Defendant's employment with Plaintiff, Defendant was required to travel to other facilities or locations outside of the workplace to conduct practices, manage games, and attend

tournaments.

69. Plaintiff knew of the travel Defendant was subject to and failed to reimburse or compensate Defendant accurately for travel expenses, such as gas or milage reimbursement for driving, food, and lodging.

### I. When Private Automobile is used in the Travel Away from Home Community 29 C.F.R. § 785.40

70. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Counterclaims as if set forth verbatim herein.

71. During Defendant's employment with Plaintiff, Defendant was required to travel to other facilities or locations outside of the workplace to conduct practices, manage games, and attend tournaments using Defendant's own vehicle.

72. Plaintiff knew of the travel Defendant was subject to and failed to reimburse or compensate Defendant accurately for travel expenses, such as gas or milage reimbursement for driving, food, and lodging.

### J. Work Performed while Traveling 29 C.F.R. § 785.41

73. Defendant re-alleges the allegations contained in the preceding paragraphs of this Second Amended Counterclaims as if set forth verbatim herein.

74. During Defendant's employment with Plaintiff, Defendant was required to travel to other facilities or locations outside of the workplace to conduct practices, manage games, and attend tournaments with other employees, customers, or individuals associate with Plaintiff.

75. Plaintiff knew of the travel Defendant was subject to and failed to reimburse or compensate Defendant for travel expenses, such as gas or milage reimbursement for driving, food, and lodging.

# VI
## CONDITIONS PRECEDENT

76. All conditions precedent to Defendant's counterclaims against Plaintiff have been performed or have occurred.

77. Defendant asks for a trial by jury to the extent permitted by law pursuant to Tex. R. Civ. P. § 216 and tenders herewith the required jury fee.

78. Defendant seeks monetary and non-monetary relief in excess of Two Hundred Fifty Thousand and 00/100 dollars ($250,000.00) in damages as a result of the causes of action set forth herein. The jury, however, may set a damage amount as they determine as the sole arbiter of the award for the egregious and outrageous conduct of Plaintiff.

79. Defendant also asks for pre and post-judgment interest, court costs, and attorney's fees pursuant to Texas Civil Practice & Remedies Code section 38.001(8) and all other applicable law, including conditional awards in the event of new trial, or any appeals and, all other relief, special or general, at law or in equity, to which Defendant may show itself to be justly entitled.

80. Defendant further seeks the declaratory relief contemplated and described herein.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant and Counter-Plaintiff Cameron Johnson, prays that Plaintiff and Counter-Defendant Hardball Baseball Academy LLC's claims be dismissed in their entirety and that it take nothing by virtue of same, and that Defendant and Counter-Plaintiff be awarded all requested relief herein including costs of court, reasonable and necessary attorney's fees, and prejudgment and post-judgment interest. Defendant and Counter-Plaintiff further respectfully requests all such other and further relief, special or general, at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

**KEARNEY, MCWILLIAMS & DAVIS, PLLC**

*Deborah L. Crain*
Deborah L. Crain
SBN: 24067319
SDTX: 1114252
dcrain@kmd.law
Bradley A. Nevills
SBN: 24083561
SDTX No. 1852126
bnevills@kmd.law
55 Waugh Drive, Suite 150
Houston, Texas 77007
Tel: (713) 936-9620, ext. 111
Fax: (713) 533-8055
**Counsel for Defendant Cameron Johnson**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 31st day of October, 2022, a true and correct copy of the foregoing instrument was served on all parties and counsel of record via the Court's electronic filing system.

**Via E-file: jaldis@grayreed.com**
Jay Aldis
Gray Reed
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77065

/s/ *Deborah L. Crain*
Deborah L. Crain