IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARDBALL BASEBALL ACADEMY, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:22-CV-01181 |
| CAMERON JOHNSON | § § § | |
| Defendant. | § § § | |

**HARDBALL BASEBALL ACADEMY, LLC'S RESPONSE TO
CAMERON JOHNSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant Hardball Baseball Academy, LLC ("Hardball") files this Response to Defendant/Counter-Plaintiff Cameron Johnson's ("Johnson") Motion for Partial Summary Judgment on his Counterclaims and respectfully shows the Court the following:

**INTRODUCTION**

On February 11, 2022, Hardball filed its Original Petition against Cameron Johnson in Harris County state district court. In it, Hardball alleged breach of contract, intentional interference with business relations, misappropriation of confidential information and trade secrets in violation of the Texas Uniform Trade Secrets Act, and unfair competition.

On February 14, 2022, Johnson filed his Original Answer.

On February 15, 2022, Hardball requested a Temporary Restraining Order in an attempt to enforce Johnson's restrictive covenants; however, the district court denied the application.

On April 7, 2022, Johnson filed his First Amended Original Answer and Counterclaims, which included various causes of action under the Fair Labor Standards Act ("FLSA"). Johnson's FLSA counterclaims against Hardball included allegations that it: (1) failed to maintain accurate

1

records in violation of 29 U.S.C. § 211(c); (2) failed to pay overtime in violation of 20 U.S.C. § 207(a); and (3), failed to pay travel or other expenses incurred by employees in the furtherance of an employer's interest in violation of 29 C.F.R. §§ 785.37-41. *See Def.'s First Am. Original Answer and Counterclaims*. As a result of Johnson's invocation of multiple federal claims, Hardball removed the lawsuit to this Court.

Johnson's FLSA counterclaims appear to be completely without merit. Nevertheless, he has remarkably now filed a Motion for Partial Summary Judgment, apparently claiming that no material issues of fact exist, and he is entitled to judgment as a matter of law, on his own counterclaims. The record, however, demonstrates the unwarranted nature of Johnson's Motion and Hardball asks that it be denied.

## THE SUMMARY JUDGMENT STANDARD

When a defendant moves for summary judgment on its counterclaim, it has the same burden as a plaintiff who moves for judgment on its own claim—the defendant must show there are no genuine disputes of material fact and establish its counterclaim as a matter of law. *See Topalian v. Ehrman*, 954 F.2d 1125, 1137 (5th Cir. 1992). If the defendant meets its burden, the plaintiff must then show there is a material fact dispute about one or more of the elements of the defendant's counterclaim. *See Topalian*, 954 F.2d at 1137. A genuine dispute is one that can be determined only by a trier of fact because it may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A nonmovant can show that there is a material fact dispute by producing evidence that could support a jury verdict in the plaintiff's favor. *Gasaway v. Northwestern Mut. Life Ins.*, 26 F.3d 957, 959 (9th Cir. 1994).

Applying these standards, Hardball, as non-movant, can defeat summary judgment by raising a material fact dispute about (1) whether Hardball maintained accurate records in

compliance with the FLSA; (2) whether Hardball properly paid Johnson overtime in compliance with the FLSA and/or whether Johnson ever even worked enough hours to qualify for overtime; and (3) whether Hardball properly paid Johnson travel expenses in compliance with the FLSA. *See Def.'s Mot. for Partial Summ. J., 2 ¶ 5.*

## STATEMENT OF FACTS

Hardball is in its 25th year as a baseball academy and has facilities in Dickinson, Pearland, and Friendswood, Texas. *See Affidavit of Richie Beard attached hereto as Exhibit A.* Hardball develops young athletes into high-level baseball players. Johnson served as a team coach and instructor at Hardball for several years, facilitating practice at Hardball's Dickinson and Pearland facilities. Johnson also traveled to several other Texas locations, as well as various cities in Louisiana, to coach during baseball tournaments.

Hardball's baseball teams compete from June to November. *Id.* Then, in December and January, Hardball conducts tryouts for the next season. In late November or early December 2021, Johnson approached Hardball's owner, Richie Beard, and told him he did not want to coach teams anymore and was going to leave Hardball. Beard instructed Johnson to not tell anyone on his 16U Elite team that he was no longer going to coach, so the Academy could get through tryouts and identify a new coach. However, Johnson disobeyed that order and told the team of his decision. As a result, the team blew up and Hardball has not had a 16U team for 2022.

On December 31, 2021, Johnson had his exit interview with Beard. *Id.* When presented with a form acknowledging Non-Compete and Non-Disclosure Agreements he executed previously, Johnson refused to sign the acknowledgement. Beard then reminded Johnson of his obligations and Johnson said:

> I understand that if I coach anybody who's been in one of your buildings, then I
> have legal ramifications and I'm man enough to accept those responsibilities. ... I

3

know that me leaving and coaching baseball outside of Hardball, I know that it hurts your business.

Beard then asked Johnson to honor his contractual commitments and Johnson responded, "If they call me, I have a relationship with them. I'm not going to turn them away." *Id.* Beard remarked that such conduct would be a violation of the contract and Johnson stated, "I understand." Beard again implored Johnson to abide by the contracts but Johnson defiantly said, "Go ahead and have your attorney start the process."

Shortly after Johnson left Hardball, he began working and providing baseball instruction at 3K Sports in Pasadena. *Id.* By working at 3K Sports, a facility within 30 miles of each of Hardball's locations, and utilizing confidential information he stole from Hardball, Johnson breached his Non-Compete Agreement with Hardball.

As a result, on February 11, 2022, Hardball filed its Original Petition. In response to the Petition, Johnson brought FLSA counterclaims supported by nothing more than threadbare facts. Moreover, the counterclaims clearly demonstrate Johnson's unfamiliarity with the FLSA. First, his recordkeeping claim is barred because only the Secretary of Labor may pursue it. Second, his insistence that a nine-year statute of limitations applies is contrary to the statute itself (as well as every opinion nationwide that has interpreted it), as the longest possible limitations period is three years. Third, the counterclaims ignore the fact the overtime provisions of the Act do not even apply to him, as he was an independent contractor. Johnson was paid by Hardball once a month and worked for Hardball non-exclusively. *See Exhibit A, Cameron Invoices and Hours Spreadsheet.* Hardball documented its payments to Johnson as "Contractor payments." *See Exhibit A, Johnson Contractor Payments 2021.* He had the freedom to choose the days and time he worked. *See Exhibit A, Hardball Instructor Manual, at Bates No. 53.* His hourly totals varied widely from month-to-month. *See Exhibit A, Time Logs.* He often exercised his own independent

4

judgment—unimpeded by his supervisors—to conduct individually-tailored player analysis, develop players' tissue durability, and evaluate postural efficiency, symmetrical movements, and joint synchronization. *See Exhibit A, Video Analysis Form, at Bates No. 211*. He was responsible for maintaining his own hourly logs, keeping the scheduling/operation managers informed, and reporting his income to the Internal Revenue Service. *See Exhibit A, Hardball Instructor Handbook, at Bates No. 64*; *N. Johnson Written Invoices 2019-2021*; *Screenshot of Johnson's Daily Time Log*. He was not entitled to any medical, dental, or insurance benefits. *See Exhibit A, Johnson Contract, at Bates No. 208*. He filled out a W-9 tax form to help keep Hardball informed of his business records. *See Exhibit A, Johnson W-9 Form*. Indeed, Johnson was an independent contractor in every sense of the term; thus, he cannot pursue FLSA claims. At minimum, though, his attempt to convince the Court that there is not even an issue of material fact on his status, and that he is instead entitled to judgment as a matter of law, is folly.

## GROUNDS FOR DENIAL OF SUMMARY JUDGMENT

This Court should deny Johnson's Motion for Partial Summary judgment for the following reasons: (1) Johnson's record-keeping violation claim is not a recognized private cause of action, and Hardball maintained accurate records; (2) Johnson was an independent contractor and therefore is not covered by the FLSA; (3) Johnson has no evidence Hardball violated any FLSA requirements; and (4) to the extent it is assumed Hardball possibly violated the FLSA, the statute of limitations bars Johnsons from receiving any unpaid wages or reimbursements prior to April 7, 2020.

Furthermore, Johnson's arguments are devoid of factual support in violation of Federal Rule of Civil Procedure 56(c)(1), largely conclusory, and certainly not supportive of any notion that he is entitled to summary judgment.

Finally, Johnson's counsel represented to Hardball a willingness to resolve these claims without prolonged litigation and thus secured a promise from Hardball's counsel that he would stand down on propounding any further discovery. Despite those assertions by Johnson's counsel, and to the complete surprise of Hardball's lawyer, Johnson then filed this Motion for Partial Summary Judgment. As such, Hardball has been precluded from conducting discovery on Johnson's counterclaims and, to the extent the Court believes it necessary, Hardball asks that it be granted leave to engage in such discovery.

## ARGUMENT AND AUTHORITIES

### I. Hardball's record-keeping claim is not a private cause of action, and alternatively, Hardball maintained accurate records in compliance with the FLSA.

Johnson has no legal or factual basis for his claim that Hardball failed to maintain accurate records in violation of 29 U.S.C. § 211(c). It is well-settled that no private cause of action exists for violations of the FLSA's recordkeeping provisions. *Lobo v. Sprint Safety, Inc.*, No. 4:19-CV-3934, 2020 WL 1659888, at *2 (S.D. Tex. Mar. 30, 2020) (dismissing employee's record-keeping claim); *See also Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002) ("Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor."). Accordingly, this Court lacks authority to enforce Johnson's claim, and summary judgment should be denied as a matter law.

Even if Johnson's claim is legally viable, it is defeated because it only applies to employees. The FLSA requires employers to keep records regarding the "wages, hours, and other conditions and practices of employment" for its employees. 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516. As an independent contractor, Johnson does not qualify for protection under the recordkeeping provision. However, if the Court assumes *arguendo* that Johnson may pursue such a claim, Hardball complied with any statutory obligations. In support of his record-keeping claim,

6

Johnson points primarily to 29 C.F.R. § 516.2(a)(7), which requires the employer to include the "[h]ours worked each workday and [the] total hours worked each workweek . . . ." *See Def.'s Mot. for Partial Summ. J., 6 ¶ 21.* Johnson cites Def.'s Ex. 2, Time Logs, and argues that the sheets "merely contain a total number of hours based on the type of lesson; they lack delineation of time by week or day, only providing the overall for the month." *See Def.'s Mot. for Partial Summ. J., 7 ¶ 22.*

Johnson's argument misrepresents the process by which, and accuracy with which, Hardball maintained records of hours worked. Contrary to Johnson's assertions, Hardball maintained spreadsheets denoting daily and weekly hours. *See Exhibit A, Instructor Scheduling System Spreadsheet.*

Further, Hardball maintained a process by which Johnson would keep daily logs of his own hours, which Johnson would submit to Hardball for invoices. *See Exhibit A, Screenshot of Johnson's Daily Time Log, at Bates No. 142; Texts between Johnson and Richie Beard, at Bates No. 168.* As such, any inaccuracies that might exist with Johnson's time can just as likely be attributed to Johnson's own failure to follow administrative training as they can to Hardball's actions.

At the very least, and especially when drawing all reasonable inferences in Hardball's favor, Hardball certainly has enough evidence to support a jury verdict that it exhibited diligence in keeping, maintaining, and preserving records. Accordingly, there is both a legal issue and a material fact dispute about whether Hardball's record-keeping complied with the FLSA; thus, even if Johnson somehow how had standing to pursue the recordkeeping claim, summary judgment as to it should be denied.

## II. Assuming *arguendo* that Hardball was required to pay Johnson for overtime, Hardball properly paid overtime in compliance with the FLSA.

To the extent Johnson's claim is for overtime under 29 U.S.C. § 207, Johnson must establish that no genuine dispute of material fact exists regarding the following four elements: (1) an employer-employee relationship existed during the time Johnson worked in excess of forty hours per week; (2) Johnson engaged in activities covered by the FLSA; (3) Hardball violated the FLSA's overtime-wage requirements; and (4), the amount of overtime pay due. *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 309 (5th Cir. 2021). Johnson hardly offers *any* factual support for these elements, let alone conclusive evidence warranting a summary judgment.

### A. An employer-employee relationship never existed between Hardball and Johnson.

The first element Johnson must establish to prevail on his 29 U.S.C. § 207 overtime-pay claim is that an employer-employee relationship existed. *Id.* Instructors at Hardball, including Johnson, are clearly independent contractors as opposed to employees.

In determining whether a worker is an employee or an independent contractor for FLSA purposes, courts consider whether the worker is economically dependent upon the alleged employer. *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010). This evaluation entails the following five, non-exclusive factors: (1) the permanency of the relationship; (2) the degree of control exercised by the alleged employer; (3) the skill and initiative required to perform the job; (4) the extent of relative investments of the worker and alleged employer; and (5), the degree to which a worker's opportunity for profit and loss is determined by the alleged employer. *Id.* at 846. These factors are mere aids to guide analysis; no single factor is controlling. *Id.*

Johnson fails to address any of these factors. His sole support for an employer-employee relationship is that he "had an employment contract with [Hardball]," dated January 1, 2020.

8

However, Johnson does not attempt to explain how the contract establishes the relationship. *See Def.'s Mot. for Partial Summ. J, 7 ¶ 24*; *Exhibit A, Johnson Employment Contract*.

While the contract does not expressly designate Johnson as an independent contractor, the Fifth Circuit has established that a contractual designation is not controlling. *Hopkins v. Cornerstone Am.*, 545 F.3d 388, 346 (5th Cir. 2008). Moreover, Johnson's argument overlooks other documents that clearly reflect Johnson's status as a contractor. *See Exhibit A, Johnson Contractor Payments 2021* (documenting payments to Johnson as "Contractor payments"); *Hardball Academy Instructor Contract* (denoting instructors as "contract employees"). Furthermore, in applying the five-factor guide, *supra*, each factor heavily favors independent contractor status.

### i. Permanency of Relationship

In considering the permanency of relationship factor, courts consider whether the worker worked exclusively for the alleged employer and whether the amount of time the worker spent working is variable rather than fixed. *See Thibault*, 612 F.3d at 846 (citing *Carrell v. Sunland Constr. Inc.*, 998 F.2d 330, 332 (5th Cir. 1993) (finding independent status as to a group of welders where the average number of weeks each welder worked per year for the company varied from three weeks to sixteen weeks).

Johnson's part-time employment at Hardball lacked permanency. Like the alleged employee in *Thibault*, Johnson did not work exclusively for Hardball, and the number of months he worked for Hardball varied from year-to-year. *See Exhibit A, Johnson Invoices and Hours Spreadsheet* (showing Johnson worked ten months in 2019, five months in 2020, and twelve months in 2021). Johnson's hours also varied from month-to-month. For example, in the year 2021, Johnson worked 29.5 hours in February and 82 hours in October, with a wide variance in between. *See Exhibit A, Time Logs*.

ii. Degree of Control

With respect to the degree of control factor, courts consider whether the alleged employer controls the manner and method of the worker's job. *Id.* Independent judgment is a significant sign of independent contractor status. *See id.* Likewise, the less contact between the supervisor and worker, the more likely the worker has independent contractor status. *Id.*; *Carrell*, 998 F.2d at 332.

Like the welders in *Carrell*, Hardball instructors have the freedom to choose days and times to work, so long as they work a minimum of fifteen hours per week. *See Exhibit A, Hardball Instructor Manual, at Bates No. 53*.

iii. Skill and Initiative

With respect to the skill and initiative factor, courts consider whether the job requires specialized skills. *Thibault*, 612 F.3d at 846 (finding that splicing requires skills and initiative given that they learn to splice through an informal apprenticeship and given that their success depends on their ability to find consistent work by moving from job-to-job).

Instructors at Hardball "specialize in sports psychology, motor learning, biomechanics, kinesiology, anatomy, and other areas that are necessary for teaching base/softball effectively. *See Exhibit A, Hardball Instructor Manual, at Bates No. 43*. Additionally, all instructors have college or professional playing experience and have undergone hours of classroom and field training work through Hardball Academy. *Id.* Instructors are skilled at incorporating auditory, visual, kinesthetic modes of learning, and other teaching principals during their instruction. *Id.* They have reviewed hours of video, participated in a number of lessons with advanced instructors, and attended staff meetings where new drills and individual case studies are reviewed before working with players. *Id.*

As for Johnson's initiative, his success at Hardball depended largely on his ability to find and maintain consistent work from clients. Given that Johnson had work outside of Hardball, his ability to stay involved at Hardball hinged on his own initiatives.

### iv. Relative Investments

With respect to the relative investments factor, courts compare the amount the alleged employer and employee each contribute to the specific job the employee undertakes. *Id* (citing *Carrel*, 998 F.2d at 333) (noting welders supplied their own welding equipment, assumed the costs of operating and maintaining their equipment, and provided their own lodging and meals.)

While Hardball does provide some needed equipment to instructors, its instructors are not entitled to any medical, dental, or insurance benefits. *See Exhibit A, Johnson Employment Contract, at Bates No. 208*. This shows Hardball's relative lack of investment and lack of intent for its workers to be treated as full employees. *See Exhibit A, Johnson Employment Contract, at Bates No. 208*. While this detail raises a material fact dispute regarding this factor, the Fifth Circuit has nevertheless accorded it little weight in the five-factor analysis. *See Hobbs v. Petroplex Pipe and Constr., Inc.*, 946 F.3d 824, 832 (5th Cir. 2020).

### v. Worker's Opportunity for Profit and Loss

As to the fifth and final factor, courts examine the degree to which the alleged employer determines the worker's opportunity for profit and loss. In evaluating this factor, the Fifth Circuit considers the worker's ability to control their own costs. *Carrell*, 998 F.2d at 333-34. Employers establish control by fixing hourly rates and imposing hour requirements. *Id.* The alleged employer in *Carrell* had fixed hourly rates; however, the Fifth Circuit nonetheless found independent contractor status, emphasizing that the welders had individual control over the number of hours they worked and were required to fill out their own time sheets and invoices and submit them to the alleged employer. *Id.*

As stated, *supra*, Hardball did not require a set number of hours; rather, it gave Johnson the discretion to dictate his monthly schedules and hourly totals. *See Exhibit A, Instructor Manual, at Bates No. 53*. Moreover, just like in *Carrell*, Hardball instructors were required to report and track their own income and report it to the I.R.S. *See Exhibit A, Hardball Instructor Contract; Texts between Johnson and Richie Beard, at Bates. No. 168; Johnson W-9 Form*. As such, Johnson's profits depended on his willingness to be available and on his ability to maintain records of his income. For these reasons, Johnson controlled his opportunity for profits and losses.

The five-factor analysis of Johnson's work relationship with Hardball, viewed in the light most favorable to Hardball, conclusively establishes independent contractor status.

### B. Johnson did not engage in activities covered by the FLSA.

The second element Johnson must establish to prevail on his 29 U.S.C. § 207 overtime-pay claim is that he engaged in activities covered by the FLSA. *White*, 996 F.3d at 309. This element is only applicable if an employer-employee relationship exists, and, as established in subsection (A), Johnson has not even mentioned the controlling, five-factor test, much less offered any evidence in support of it. Given that he is clearly an independent contractor, as established by Hardball with actual support in the record, *supra*, Johnson did not engage in activities covered by the FLSA.

### C. Assuming *arguendo* that overtime wages were required, Johnson has offered no evidence that Hardball violated the requirements.

The third element Johnson must establish to prevail on his 29 U.S.C. § 207 overtime pay claim is that Hardball violated the overtime wage requirements. *White*, 996 F.3d 309. Assuming that overtime wages were required, Johnson has offered no evidence that Hardball failed to comply. This Court recently established that an employee's allegation that she was "denied overtime wages for all hours worked over (40) in a workweek" was insufficient to allow her 29

U.S.C. § 207 wage claim to survive a Rule 12(b)(6) motion to dismiss. *Rolfsmeier v. Cole Speech & Language Center, LP*, No. CV H-21-2625, 2021 WL 5417370, *2-3 (S.D. Tex. Nov. 19, 2021). The Court reasoned that the employee's complaint "[did] not allege facts that could show whether she worked more than 40 hours in a single workweek, how often or when this occurred, or what she was paid for her work." *Id*. at *2. Rather, the employee alleged "only that she was not paid for some amount of off-the-clock work." *Id*. at *3.

In Defendant's Motion for Partial Summary Judgment, Johnson uses nearly identical language as the employee in *Rolfsmeier* to support his argument that Hardball violated the FLSA's overtime-wage requirements. *See Def.'s Mot. for Partial Summ. J., 8 ¶ 26*. Indeed, Johnson alleges that "Plaintiff failed to pay Defendant for workweeks in which Defendant worked more than forty (40) hours." *Id.* As in *Rolfsmeier*, Johnson does not provide any factual support regarding how often or when this occurred, or what Hardball paid him for his work. *Id.* The only factual support Johnson provides is that "Plaintiff would even deduct money from Defendant's salary for any travel costs." *Id at 8-9*. The only difference between the allegations of the *Rolfsmeier* plaintiff and Johnson is that he mentions this travel cost deduction; however, he still fails to specify how much money was deducted, how often it was deducted, or when this deduction occurred. *See id.* Ironically, in *Rolfsmeier,* the Fifth Circuit concluded the plaintiff's factual support was too weak to even plausibly state a claim for relief; yet, Johnson comes before this Court and contends he is entitled to judgment as a matter of law on his almost identical overtime claim. Surely, the Court recognizes this irony and will reject Johnson's demand for summary judgment.

Moreover, Johnson does not provide a single citation to his broad factual assertions. *See id*. Non-movants must identify evidence in the record and articulate how that evidence supports

13

his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FRCP 56(c)(1) (requiring parties to cite materials in the record for statements of fact in order to show facts are not genuinely disputed). Because Johnson has not identified any evidence in the record to substantiate his arguments, his "support" for the third element is both legally and factually insufficient and, at a minimum, a material fact dispute exists about whether Hardball complied with the FLSA's overtime wage requirements.

### D. Johnson has not established, nor even estimated, the amount of overtime due if a violation occurred.

The fourth and final element Johnson must establish to prevail on his 29 U.S.C. § 207 overtime pay claim are the amounts of overtime pay due. *White*, 996 F.3d 309. Johnson's apparent argument in support of this element is both non-sensical and conclusory. "Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Rather, the non-movant must identify evidence in the record and articulate how that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

With respect to the amount due, Johnson states: "In this case, the lack of proper records indicating the hours worked by Defendant attributes to the fact that the time sheets failed to denote the exact number of hours Defendant worked." *Def.'s Mot. for Partial Summ. J.*, 9 ¶ 27. As such, Johnson's assertion demonstrates he cannot establish elements four and five because his Motion does not state an amount due. Further, his statement is conclusory, as it does not provide the underlying facts to support his assertion. Moreover, he does not substantiate this statement with any evidence in the record. *See id.* For these reasons, Johnson has failed to establish the amount of overtime due, even if it were assumed that a violation occurred in the first place.

Because Johnson was an independent contractor, he did not engage in activities protected by the FLSA; he offers no evidence that Hardball failed to comply with wage requirements; and he provides no amount of overtime due to him. Accordingly, Johnson has failed to establish a single element of his wage claim against Hardball and the Court should deny summary judgment on the claim.

### III. Assuming *arguendo* that Johnson is an employee, Johnson has offered no evidence that Hardball failed to pay traveling expenses in compliance with the FLSA.

Johnson failed to substantiate his argument that Hardball failed to pay him for traveling expenses. As previously stated, FRCP 56(c)1 requires parties to cite materials in the record for statements of fact in order to show they are not genuinely disputed. FRCP 56(c)(1); *Celotex*, 477 U.S. at 322. While Johnson offers broad references to his travel, he fails to cite any materials in the record in support of his argument that he did not receive reimbursement. *See Def.'s Mot. for Partial Summ. J., 9-10 ¶ ¶ 28-33*. Thus, Johnson has failed to show that any of his assertions are not genuinely disputed.

Moreover, the "Benefits" provision of Johnson's contract with Hardball, made effective January 1, 2020, states that Johnson's benefits "may *or may not* include . . . reimbursement of expenses, travel, meals, etc." *See Exhibit A, Employment Contract, at Bates No. 208* [emphasis added]. This provision, coupled with the absence of any evidence from Johnson, support a denial of summary judgment on Johnson's reimbursement claim.

### IV. Even if Johnson violated the FLSA, the statute of limitations bars Johnson from receiving any unpaid wages or reimbursements prior to April 7, 2020.

Assuming *arguendo* that Johnson violated the FLSA, Johnson is time-barred from recovering any unpaid wages for jobs worked prior to April 7, 2020. If a plaintiff has pleadings to support an affirmative defense to the defendant's counterclaim, when the defendant moves for summary judgment, the plaintiff may attempt to produce summary judgment evidence to raise a

material fact dispute on each element of its affirmative defense. *See Continental Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1103-04 (9th Cir. 1994). To raise a material fact dispute on an element of an affirmative defense, and thus preclude summary judgment, the party asserting the affirmative defense need only produce some evidence "supporting the defense." *See id.*

Hardball pled in its Original Answer to Defendant's Counterclaims the statute of limitations as an affirmative defense to Johnson's FLSA claims. *See Pl.'s Original Answer to Def.'s Counterclaims*. Therefore, Hardball can preclude summary judgment by producing evidence that merely supports the statute of limitations defense. Causes of action arising under the FLSA must be commenced within two years after the cause of action accrues, or within three years if "willfulness" is found. *See* 29 U.S.C. § 255(a). The two-year limitations period is applicable here. Throughout Johnson's tenure at Hardball, and at all times, Hardball has conformed with federal administrative regulations, orders, and rulings concerning the FLSA. As such, if an act or omission by Hardball did violate the FLSA, that act or omission was at least made in good faith and not willful. Accordingly, the two-year statute of limitations applies.

Johnson's FLSA cause of actions commenced on April 7, 2022. *See Def.'s First Am. Answer and Counterclaims*. Therefore, the statute of limitations bars any claims arising more than two years before April 7, 2022. To the extent Johnson claims any unpaid wages or reimbursements before April 7, 2020, limitations preclude him from receiving those wages. Because Hardball has offered sufficient support for its statute of limitations claim, summary judgment on Johnson's FLSA claims should be denied. *See Continental*, 24 F.3d at 1103-1104.

### V. As an alternative measure, Hardball asks this Court for more time to conduct discovery in response to Johnson's claims.

On or about April 27, 2022, counsel for the parties conferred on next steps in this case. As a result of those conversations, Hardball's counsel indicated he would stand down on conducting

16

any discovery until the parties had had ample opportunity to explore settlement. On August 16, 2022, Johnson's counsel indicated she needed supplemental discovery responses pertaining to Johnson's FLSA counterclaims in order to assess settlement options. Still abiding by his promise to not serve any discovery requests, or depose Johnson, Hardball's counsel supplied Johnson's counsel the additional information she indicated was needed with respect to Johnson's wage claims. Then, on November 22, 2022, without any warning that settlement discussions had apparently ceased, or that any dispositive motions would be submitted, Johnson filed his Motion for Partial Summary Judgment. Because Hardball was waylaid by the filing of the Motion, it has had an inadequate opportunity to conduct discovery on the very causes of action on which Johnson now seeks judgment as a matter of law. Although Hardball believes that even the limited record that exists in this case still establishes that Johnson's FLSA claims fail as a matter of law -- rather than that he is entitled to summary judgment on them, as his Partial MSJ alleges -- if the Court believes that Hardball needs to develop the record more fully, it asks that it be granted leave to do so. *See* FRCP 56(e)(1); *Grimes. v. District of Columbia*, 794 F.3d 83, 92 (D.C. Cir. 2015) (if the court finds a party fails to properly support or address the asserted facts, the court can give the party the opportunity to properly support or address the fact).

    Accordingly, in the event this Court finds that Hardball has failed to provide sufficient factual support for any of its defenses, Hardball respectfully asks that, as an alternative measure, it be given more time to conduct discovery. Such relief would be particularly fair considering that Hardball's misguided reliance on opposing counsel's communications has unduly prejudiced Hardball regarding discovery it undoubtedly would have otherwise conducted regarding Johnson's FLSA claims.

## PRAYER

For the foregoing reasons, Hardball believes that it is it, rather than Johnson, who is entitled to summary judgment on Johnson's FLSA counterclaims. However, at a minimum, material issues of fact exist as to those counterclaims and Johnson has failed to conclusively establish any of the claims as a matter of law. Therefore, Hardball requests that this Court deny the Motion for Partial Summary Judgment, or if the Court believes it necessary, grant Hardball additional time to conduct discovery on Johnson's counterclaims.

Respectfully submitted,

**GRAY REED & McGRAW LLP**

By: /s/ Jay Aldis
Jay Aldis
Texas State Bar No. 00785656
Travis Nadalini
State Bar No. 24132308
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:   (713) 986-7175
Fax:   (713) 986-7100
jaldis@grayreed.com
tnadalini@grayreed.com

Attorneys for Plaintiff/Counter-Defendant
Hardball Baseball Academy, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the __20th__ day of December 2022, a copy of the foregoing document was served on counsel of record by the Court's electronic filing system.

_____
Jay Aldis